# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA

FILED
U.S. DISTRICT COURT
INDIANAPOLIS DIVISION

2005 SEP 22  PM 2: 19

SOUTHERN DISTRICT
OF INDIANA
LAURA A. BRIGGS
CLERK

| | |
|---|---|
| THE MOUNTBATTEN SURETY COMPANY, INC., | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) )  Case No. |
| FINLAY PROPERTIES, INC., FINLAY REAL ESTATE SERVICES, NM/WY, INC., CHRISTOPHER C. FINLAY and CARROLL FINLAY | ) ) **1:05-cv-1413-SEB-VSS** ) ) ) |
| Defendants. | ) ) ) |

## THE MOUNTBATTEN SURETY COMPANY, INC.'S COMPLAINT FOR INDEMNITY AND BREACH OF CONTRACT

Plaintiff, the Mountbatten Surety Company, Inc. ("Mountbatten"), through its attorneys,

Bator, Redman, Bruner, Shive & Ludwig, P.C., by Eric C. Redman, for its Complaint for Indemnity

and Breach of Contract against the defendants, Finlay Properties, Inc. ("FP"), Finlay Real Estate

Services, Inc. ("FRES"), NM/WY, Inc. ("NM/WY"), Christopher C. Finlay ("Christopher") and

Carroll Finlay ("Carroll") (collectively referred to herein from time to time as the "Indemnitors"),

states as follows:

### PARTIES, JURISDICTION AND VENUE

1.      Plaintiff Mountbatten is a corporation organized and existing under the laws of the

state of Pennsylvania, with its principal place of business in Bala-cynwyd, Pennsylvania, that is

licensed to conduct business as a commercial surety in the State of Indiana.

2.      Defendant FP is a corporation organized and existing under the laws of the state of

New Hampshire, with its principal place of business in Jacksonville Beach, Florida.

3.    Defendant FRES is a dissolved New Hampshire corporation, which, prior to its dissolution, had its principal place of business in Jacksonville Beach, Florida. FRES was voluntarily dissolved in September of 2004.

4.    Defendant NM/WY is a dissolved New Hampshire corporation, which, prior to its dissolution, had its principal place of business in Jacksonville Beach, Florida. NM/WY was voluntarily dissolved in November of 2003.

5.    Defendant Christopher is a citizen of the State of Florida, with his principal residence located in the State of Florida.

6.    Defendant Carroll is a citizen of the State of Florida, with her principal residence located in the State of Florida.

7.    The amount in controversy in this matter exceeds the sum of $75,000.00, exclusive of interest and costs.

8.    Jurisdiction herein is founded upon diversity of citizenship in accordance with 28 U.S.C. §1332(a).

9.    The events giving rise to the claim set forth in this Complaint occurred in the Southern District of Indiana and the Defendants either conduct or conducted business in the Southern District of Indiana.

10.    Venue in this district is therefore proper pursuant to 28 U.S.C. §1391(a).

## ALLEGATIONS COMMON TO ALL COUNTS

## THE GENERAL INDEMNITY AGREEMENT

11.    On or about December 4, 2000, FP, FRES, NM/WY, Christopher and Carroll executed and delivered to Mountbatten a certain General Indemnity Agreement (hereinafter referred

2

to as the "GIA"). A true and accurate copy of the GIA is incorporated herein and attached hereto as Exhibit A.

12.    The GIA was executed by the Indemnitors to induce Mountbatten into executing certain construction payment and performance bonds on behalf of FP.

13.    In the GIA, the Indemnitors agreed and covenanted, among other things, to indemnify, exonerate and save Mountbatten harmless from and against any and all liability, loss, cost, damage and expense of whatsoever kind or nature (including, but not limited to, interest, court costs and counsel, attorneys, consulting, accounting and other professional and trade fees), which Mountbatten incurred or was exposed to: (1) by reason of having issued any bonds; (2) by reason of the failure of FP or the Indemnitors to perform or comply with the promises, covenants and conditions of the GIA; or (3) in enforcing any of the promises, covenants or conditions of the GIA. See Exhibit A, ¶ 5.

14.    At the specific request of FP, and in consideration for, and in reliance upon, the promises made by the Indemnitors in the GIA, Mountbatten issued Labor and Material Payment Bond and Performance Bond No. MTBN-000037-PP (the "Bonds"). The Bonds were issued naming FP as Principal, Mountbatten as Surety and Edinborough Associates, LP as Obligee for the Bedford Park Apartment Rehabilitation project (the "Project") in Indianapolis, Indiana, for which FP was to act as the general contractor for the rehabilitation project. A copy of the Labor and Material Payment Bond is attached hereto and incorporated by reference as Exhibit B.

15.    During the course of FP's performance as the general contractor for the Project, Mountbatten received payment bond claims from the following FP subcontractors on the Project, claiming non-payment for labor or materials supplied to FP for use on the Project:

3

      a.       Suburban Glass Service, Inc. ("Suburban"); claim amount-$35,116.60;

      b.       Kyler Bros. Services, Inc. ("Kyler"); claim amount-$14,861.83; and

      c.       Hoosier Contracting, LLC ("Hoosier"); claim amount-$582,251.99.

16.      Suburban, Kyler and Hoosier all also filed formal suit against FP, Mountbatten and other parties in Indiana state court seeking recovery under lien and bond theories.

17.      Mountbatten was forced to retain attorneys to protect and defend its interests against the three payment bond claims and their corresponding lawsuits.

18.      Depositions were taken by the claimants related to these suits, which Mountbatten was forced to prepare for, attend and participate in.

19.      Mountbatten made repeated demands upon FP, the Indemnitors and their attorneys, to provide Mountbatten with any defenses or other relevant factual information or documentation that FP possessed in relation to the three payment bond claims.

20.      FP and the Indemnitors, both personally and through their attorneys, repeatedly made oral and written promises and assurances to Mountbatten regarding steps that FP and the Indemnitors were taking regarding, amongst other things, extensions of arbitration dates, financing arrangements, deadlines, pleading filings in the three lawsuits, production of documents and accounting figures for the Project, which promises, assurances and deadlines were routinely broken and missed by FP and the Indemnitors.

21.      FP, the Indemnitors and their attorneys repeatedly promised and assured Mountbatten that FP would pay the two outstanding payment bond claims and settle the corresponding lawsuits brought by Suburban and Kyler.

22.     After over one year of failed promises by FP to pay these two claims, on October 3, 2003, Mountbatten paid the payment bond claims of Suburban and Kyler, in the amounts of $14,861.83 and $35,116.60 respectively, in exchange for receipt of releases of the two claims.

23.     Mountbatten was forced to incur substantial expenses and attorneys' fees in processing the claims, investigating the claims, negotiating and settling the claims, making the payments and then attempting to secure reimbursement from FP and the Indemnitors.

24.     Hoosier's claim was also forced into binding arbitration between all the parties, causing additional expense to Mountbatten for preparation and monitoring.

25.     On March 26, 2004, Hoosier was awarded $286,019.47 against FP at the arbitration.

26.     Beginning in April of 2004, FP, the Indemnitors and their attorneys repeatedly promised and assured Mountbatten that FP would pay the arbitration award to Hoosier, but repeatedly failed to do so.

27.     Following the arbitration award, attorneys for Hoosier demanded that Mountbatten pay Hoosier's payment bond claim and threatened to escalate the litigation with Mountbatten, convert the arbitration award against FP into a binding judgment and seek a trial date for Hoosier's claim against Mountbatten if FP did not immediately pay the arbitration award amount to Hoosier. A trial date was ultimately set by the court on Hoosier's payment bond claim against Mountbatten.

28.     On June 4, 2004, having still not received any payment from FP, Hoosier issued written discovery to Mountbatten related to its claim, including requests to admit, which Mountbatten was forced to answer.

29.     On or about August 16, 2004, FP finally forwarded wired funds reimbursing Mountbatten for the two amounts Mountbatten had previously paid in payment bond claim loss

payments to Suburban and Kyler, and FP also directly paid the arbitration award amount to Hoosier in exchange for a complete release of Hoosier's claims against FP and Mountbatten.

30.     Prior to FP's reimbursement to Mountbatten for Mountbatten's loss payments and FP's payment to Hoosier, Mountbatten had incurred substantial attorneys' fees and other costs and expenses by reason of having issued bonds on behalf of FP and by reason of attempting to enforce the terms of the GIA against the Indemnitors.

31.     Pursuant to the terms of the GIA, Mountbatten has repeatedly made written demands upon the Indemnitors to exonerate, indemnify and save Mountbatten harmless from and against any and all liability, loss, cost, damage and expense of whatsoever kind or nature.

32.     To date, the Indemnitors have refused to exonerate, indemnify and save Mountbatten harmless from the attorneys' fees and other costs and expenses incurred by Mountbatten by reason of issuing the Bonds.

33.     Mountbatten previously brought suit against FP and the Indemnitors in the Circuit Court of Cook County, Illinois, seeking to recover its expenses from the Indemnitors, which suit resulted in Mountbatten incurring additional attorneys' fees and costs.

34.     The Cook County suit was dismissed for lack of personal jurisdiction over the Indemnitors by the Cook County Circuit Court.

35.     To date, Mountbatten's un-reimbursed paid expenses total the sum of $157,984.00. Without waiving any attorney-client or other privilege, Mountbatten's internal screen captures detailing each expense payment made by Mountbatten that make up this amount, are attached hereto as Group Exhibit C.

6

36.     In addition, Mountbatten has been billed by its attorneys for four additional invoices for services performed related to the indemnity actions, which, when paid by Mountbatten, will also become recoverable from the Indemnitors under the GIA.  These four invoices, dated June 10, July 7, August 3 and August 24, 2005, total $6,041.00, and are in addition to the $157,984.00 detailed above.

## COUNT I

### INDEMNITY

37.     Mountbatten incorporates and realleges Paragraphs 1 through 36 of the Complaint as its Paragraph 37 of Count I.

38.     By reason of having executed bonds on behalf of FP, by reason of Mountbatten's attempts to enforce the terms of the GIA against the Indemnitors and as a result of the claims asserted by Hoosier, Suburban and Kyler against the Bonds, Mountbatten has been forced to hire and pay attorneys for its defense and for prosecution of Mountbatten's rights under the GIA.

39.     Mountbatten has incurred and continues to incur attorneys' fees as a result of the bond claims and as a result of Mountbatten's attempts to enforce of the terms of the GIA against the Indemnitors. As of August 24, 2005, Mountbatten has incurred $164,025.00 in attorneys' fees, costs and expenses.

40.     In paragraph 5 of the GIA, the Indemnitors agreed to indemnify Mountbatten for any claim payments made by Mountbatten under the Bonds and for all costs, expenses and attorneys' fees incurred by Mountbatten as a result of having issued the Bonds.  (See Exhibit A, ¶ 5).

41.     While the Indemnitors have reimbursed Mountbatten for the two payment bond loss payments Mountbatten made to Suburban and Kyler, the Indemnitors have not reimbursed or

indemnified Mountbatten for any of the attorneys' fees, costs or expenses incurred by Mountbatten by reason of having issued the Bonds on behalf of FP.

42.     Beginning on April 7, 2003, and continuing repeatedly and uninterrupted until the time of the filing of this suit, Mountbatten has made repeated written demands upon the Indemnitors for full indemnification against all of Mountbatten's attorneys' fees and costs incurred to date.

43.     The Indemnitors are in breach of the express terms of the GIA contract, which they each signed, by continually failing and refusing to reimburse Mountbatten's attorneys' fees, expenses and costs incurred to date.

WHEREFORE, the plaintiff, the Mountbatten Surety Company, Inc., prays that judgment be entered in favor of Mountbatten and against the defendants, Finlay Properties, Inc., Finlay Real Estate Services, Inc., NM/WY, Inc., Christopher C. Finlay and Carroll Finlay, jointly and severally, in the amount of $164,025.00, plus additional sums for any additional costs, expenses and attorneys' fees incurred through the date of judgment, together with such further relief as this Court deems appropriate.

### COUNT II

### BREACH OF CONTRACT

44.     Mountbatten incorporates and realleges Paragraphs 1 through 36 of the Complaint and Paragraph's 37 through 43 of Count I as its Paragraph 44 of Count II.

45.     The Indemnitors are obligated, under the terms of the GIA, to indemnify Mountbatten from all "liability, loss, cost, damage and expense of whatsoever kind or nature."  (See Exhibit A, ¶ 5).

8

46.     The Indemnitors have breached their obligations under the GIA by failing to fully indemnify Mountbatten for all of its attorneys' fees, costs and expenses.

47.     Mountbatten has been damaged by the Indemnitors' breach of their obligations under the GIA in the total amount of $164,025.00.

WHEREFORE, the plaintiff, the Mountbatten Surety Company, Inc., prays that judgment be entered in favor of Mountbatten and against the defendants, Finlay Properties, Inc., Finlay Real Estate Services, Inc., NM/WY, Inc., Christopher C. Finlay and Carroll Finlay, jointly and severally, in the amount of $164,025.00, plus additional sums for any additional costs, expenses and attorneys' fees incurred through the date of judgment, together with such further relief as this Court deems appropriate.

THE MOUNTBATTEN SURETY COMPANY, INC.

By: _____
One of its attorneys

Eric C. Redman   #6330-49
Bator, Redman, Bruner,
Shive & Ludwig, P.C.
151 North Delaware Street
Suite 1106
Indianapolis, IN 46204
Tel: (317) 685-2426
Fax: (317) 636-8686